IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| LINDA MILLIGAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:12-CV-101 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**
**TO REVERSE DECISION OF THE COMMISSIONER AND TO REMAND THE CASE**

Plaintiff LINDA MILLIGAN brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED for action consistent with this Report and Recommendation.

I.
BACKGROUND

Plaintiff applied for disability insurance and supplemental security benefits in January of 2010. (Transcript [hereinafter Tr.] 102-03, 107-09). Plaintiff alleged she had been unable to work since July 18, 2009, due to difficulty concentrating, a lack of energy and motivation to tend to her

basic needs, unmanageable sleeping pattern, anxiety, and phobias.  (*Id.* 36, 38, 127-34).  The onset date of July 18, 2009, appears to be based upon one of plaintiff's three recorded suicide attempts.  (*Id.* 39-40, 181).  The Social Security Administration, finding plaintiff suffers from the primary diagnosis of mood disorder and the secondary diagnosis of anxiety-related disorders, denied benefits initially and upon reconsideration.  (*Id.* 55, 56).

Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on June 6, 2011.  (*Id.* 35).  Plaintiff was represented by an attorney at the hearing.  (*Id.*).  After the hearing, the ALJ issued a written decision finding plaintiff, although not capable of performing her past relevant work, was capable of performing other jobs and was consequently not disabled and not entitled to any benefits.  (*Id.* 17-29).  The Appeals Council denied plaintiff's request for review of the ALJ's decision.  (*Id.* 1).  This lawsuit, based on 42 U.S.C. § 405(g), followed.

## II.
## ISSUE PRESENTED

In a single ground of error, plaintiff contends reversal of the Commissioner's determination is warranted because "[t]he ALJ erred in determining that Ms. Milligan is not disabled based upon an exertional Grid Rule when her disabilities are based upon non-exertional mental disorders." ("Plaintiff's Brief in Support of Claim for Social Security Benefits," doc. 16, pg. 5 (filed Nov. 21, 2012)).  In response, the Commissioner contends "plaintiff's [mental] impairments were so mild in nature as to impose non-exertional limitations that were fully accommodated by a restriction [in the RFC] to unskilled work."  ("Defendant's Brief," doc. 17, pg. 3 (filed Dec. 14, 2012)).

III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence in the context of Social Security determinations "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). That is, substantial evidence "is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).

In assessing the substantiality of the evidence, courts generally focus on four factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). In making this assessment, courts "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [their] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). Provided that the correct legal standards are applied, when "substantial evidence supports the [Commissioner's] findings, they are conclusive and must be affirmed." *Spellman*, 1 F.3d at 360.

IV.
MERITS

Plaintiff contends the ALJ erred in finding plaintiff not disabled because she suffers from several mental disabilities, which are nonexertional impairments, and it was improper for the ALJ to rely exclusively on the Medical Vocational Guidelines without any guidance from a vocational expert in performing his Step Five analysis.

*A. The Five-Step Sequential Analysis*

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920. The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner if the analysis reaches the fifth step. *See Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset date, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments. *Id.*

If the claimant has severe impairments that do not meet or equal the severity of a listing, the Commissioner must then assess the claimant's residual functional capacity (RFC). *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). This RFC assessment is utilized in making both the Step Four and Step Five determinations. 20 C.F.R. § 416.920. At Step Four, the ALJ, looking to the RFC, determines whether the claimant can return to her past relevant work. *Id.* If the claimant cannot return to her past relevant work, the burden shifts to the Commissioner (at Step Five) to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.*

In this case, at Step One of his decision the ALJ held plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 18). At Step Two, the ALJ found plaintiff suffers from the combination of the severe impairments of major depression, dysthymic disorder, PTSD-type anxiety disorder, cluster B personality traits, substance abuse, hypertension, hyperlipidemia, and obesity. (*Id.*). Plaintiff focuses this appeal on the limiting effects of her mental impairments classified by the ALJ as severe. At Step Three, the ALJ concluded plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* 19). At Step Four, the ALJ found plaintiff had the RFC to "perform the full range of medium work with no nonexertional physical limitations, with the restriction that she is limited to performing unskilled work." (*Id.* 19). This RFC determination, specifically the portion restricting plaintiff to unskilled work, prevented plaintiff from returning to her past relevant work. (*Id.* 28). Accordingly, at Step Five, the ALJ, relying solely upon the Medical-Vocational Guidelines and without guidance from vocational expert, concluded "jobs exist in significant numbers in the national economy that Ms. Milligan is able to perform." (*Id.* 29).

### B. The Step Five Determination

At Step Five, the burden is on the Commissioner to show that the claimant is capable of performing work other than the claimant's past relevant work. *Anderson*, 887 F.2d at 632. The Commissioner typically fulfills this burden in one of two ways. First, the Commissioner can take administrative notice of the availability of work by consulting predetermined findings contained in the Medical Vocational Guidelines, commonly referred to as the Grids. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). Alternatively, the Commissioner can receive testimony from a

vocational expert. *Id.*

At Step Five, the Commissioner must take into consideration not only the claimant's age, education, and work experience, but also the claimant's RFC. Assuming there is no dispute with the first three of these areas, which are typically undisputed, the only remaining factor to consider at this step, and the key factor for determining whether utilization of the Grids or a vocational expert is appropriate, is the claimant's RFC. If the RFC is accurately reflected in one of the pre-determined categories of the Grids, then the ALJ may use the Grids in making his determination. If the limitations of the claimant's RFC are not adequately reflected in the Grids, however, the ALJ must consult a vocational expert, who is "able to compare all the unique requirements of a specified job with the particular impairments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.*

Specifically, the Grids are intended for use when evaluating a person with only (i) exertional impairments or (ii) non-exertional impairments *that do not significantly affect his RFC. Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Grids are not designed to interpret the abilities of a person suffering from nonexertional impairments that *do* significantly affect the claimant's RFC. *Id.*; *Dellolio v. Heckler*, 705 F.3d 123, 127 (5th Cir. 1983). Consequently, "[i]f . . . the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such [non-past-relevant-work] jobs exist in the economy." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

There are several potential pitfalls for the Commissioner when making this Step Five determination. If she uses the Grids in a situation where they are not intended, i.e., when the claimant suffers from a nonexertional impairment significantly affecting the claimant's RFC, she

has committed legal error. *Loza v. Apfel*, 219 F.3d 378, 398 (5th Cir. 2000) (holding "based on the record as a whole, it cannot be said that the ALJ's reliance solely on the [Grids] at the fifth level in this case was a correct application of the proper legal standards"). Moreover, the Commissioner has the burden of proof at Step Five, and if she improperly relies on the Grids without any other support in the way of vocational expert testimony, the decision will not, upon review, withstand the requirement it be based upon substantial evidence. *Fields*, 805 F.2d at 1171.

1. When Does a Nonexertional Impairment Significantly Affect the RFC

Where the claimant suffers from nonexertional impairments, the question for the Court is whether the claimant's nonexertional impairments significantly affect her RFC. As reviewed above, if the nonexertional impairments do not significantly affect the claimant's RFC, then application of the Grids is appropriate; if they do significantly affect the RFC, application of the Grids is not appropriate.

In evaluating when an impairment's impact is "significant" at Step Five, courts have looked back to Step Two of the Commissioner's five-step analysis. This is because at Step Two, the Commissioner sets forth which of the claimant's impairments are "severe." An impairment is considered "severe" at Step Two if it "*significantly limits* [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.§ 404.1520(c). Courts have reasoned an impairment which so "significantly limits" the claimant as to be determined severe at Step Two is *a priori* an impairment significantly affecting the claimant's RFC at Step Five. *See Loza*, 219 F.3d at 398-99; *White v. Astrue*, 239 F. App'x 71, 73–74 (5th Cir. 2007) ("An ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five."); *Hearne v. Barnhart*, 111 F. App'x 256, 257–58 (5th Cir. 2004) ("In *Loza*, this court linked

the definition of a 'severe' impairment at Step Two to the determination of whether a claimant's nonexertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate."). It is considered internally inconsistent for the ALJ to find a nonexertional impairment is severe at Step Two and then find, at Step Five, the Grids are applicable because the claimant does not have any nonexertional impairments significantly affecting the claimant's RFC. *See Pedigo v. Astrue*, No. 4:09–CV–2513, 2010 WL 3808687, at \*4 (S.D.Tex. Sept.27, 2010) ("The Fifth Circuit . . . has held consistently that a Step Two finding that a nonexertional mental impairment is 'severe' precludes an ALJ from relying solely upon the Grid Rules when making the Step Five determination."); *Rocha v. Astrue*, No. 2:04–CV–0324, 2008 WL 763070, at \*5–6 (N.D.Tex. Mar. 21, 2008) (holding substantial evidence could not support the ALJ's determination at Step Five that the claimant's nonexertional impairments were not significant after finding at Step Two that the claimant suffered from several severe nonexertional impairments at Step Two); *Allsbury v. Barnhart*, 460 F.Supp.2d 717, 726 (E.D.Tex. 2006) (finding: (i) ALJ erred in applying the Grids at Step Five because he failed to first determine that claimant's nonexertional impairments did not significantly affect claimant's RFC; (ii) it would have been internally inconsistent for ALJ to make such a finding when he found claimant's nonexertional impairments, in combination, to be severe; and (iii) any such finding would not have been supported by substantial evidence); *but see Guillory v. Barnhart*, 129 F. App'x 873, 874 (5th Cir. 2005) ("Guillory argues that the ALJ's finding that her nonexertional impairments, in conjunction with her physical impairments, were severe at Step Two precluded the ALJ from finding that they were insignificant at Step Five. Contrary to Guillory's argument, the mere presence of a nonexertional impairment does not preclude use of the Grid Rules. If those impairments do not have a significant effect on her

residual functional capacity, use of the Grid Rules is appropriate").

### 2. Did the ALJ Err in Relying Solely Upon the Grids

As indicated above, the ALJ in this case found, at Step Two, that plaintiff suffers from several severe, nonexertional impairments. (Tr. 18). At Step Four, the ALJ found plaintiff had the RFC to "perform the full range of medium work with no nonexertional physical limitations, with the restriction that she is limited to performing unskilled work." (*Id.* 19). This restriction to "unskilled work" directly resulted from plaintiff's nonexertional limitations, as the ALJ explained:

> I took these [psychiatric] examination findings into account in finding Ms. Milligan has been limited to unskilled. Ms. Milligan clearly has had the intellectual and cognitive ability to do more complex work activity. However, her depression, emotional distress, anxiety, and need for a low stress environment reasonably diminish the complexity of the jobs she could do. I believe a limitation to unskilled work accommodates these symptoms.

(*Id.* 24). Finally, at Step Five, the ALJ held,

> Ms. Milligan can perform the full range of medium work with no nonexertional physical limitations. Based on this residual functional capacity and Ms. Milligan's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational rules 203.21-203.23, regardless of the transferability of job skills.
>
> Although I find Ms. Milligan is limited to unskilled work because of her mental impairments, such a finding does not prevent use of the Medical-Vocational Guidelines to direct a conclusion, because the Medial-Vocational Guidelines take into account the occupations base of unskilled jobs.

(*Id.* 29).

The ALJ's finding, however, is contrary to caselaw in this circuit: "[i]f . . . the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such [non-past-relevant-work] jobs exist in the economy." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

It is undisputed plaintiff suffers from nonexertional impairments. In fact, even the ALJ recognized at the hearing that plaintiff's impairments are "primarily mental." (Tr. 36). In making his Step Five determination, however, the ALJ, in direct contradiction to the requirements of *Newton*, did not rely upon a vocational expert. Upon this reasoning alone, the ALJ committed error.

Even without the *Newton* line of cases, however, the ALJ committed error by not relying upon a vocational expert. Specifically, the ALJ's decision finding plaintiff's several nonexertional impairments were severe at Step Two was internally inconsistent with his later decision that the impairments did not significantly affect plaintiff's RFC at Step Five. *See Loza*, 219 F.3d at 398-99; *White*, 239 F. App'x at 73–74; *Hearne*, 111 F. App'x at 257–58; *Pedigo*, 2010 WL 3808687 at *4; *Rocha*, 2008 WL 763070 at *5-6. Either plaintiff's nonexertional impairments do significantly limit her (as determined in Step Two), *see* 20 C.F.R. § 404.1520(c), or they do not significantly limit her (as determined in Step Five). The Commissioner presents no framework under which the ALJ's actions were appropriate. The only conclusion for the Court, based upon the Commissioner's response, is the most obvious one, i.e., the ALJ cannot rule one way on the issue at Step Two and rule the opposite at Step Five. Such internal inconsistency constitutes reversible error.

It appears as though the ALJ in his decision, and the Commissioner now in supporting that decision, concluded (i) the characterization of plaintiff's nonexertional impairments as simply limiting plaintiff to an "unskilled" occupational base is adequate and (ii) the Grids establish there are sufficient numbers of unskilled jobs available to the claimant to satisfy the Commissioner's Step Five burden because the Grids take into consideration an occupational base limited to unskilled jobs. Not only can the Court find no caselaw in support of such a proposition, but it has previously rejected such reasoning. *See Chapa v. Astrue*, No. 2:05-CV-253, 2008 WL 952947, at *6 (N.D. Tex. Apr. 8, 2008). In *Chapa* the Court was presented with a factual situation similar to the one in the

instant case. *See id.* The pertinent portion of the Court's opinion follows:

> The ALJ made a determination that plaintiff's nonexertional mental impairments, in particular, his borderline intellectual abilities and his moderate impairment in the area of concentration, persistent and pace, limited the plaintiff to one to two step tasks. The ALJ further found this nonexertional impairment limited plaintiff to unskilled jobs. In making this determination, the ALJ, in effect, became a vocational expert. Whether plaintiff's moderate impairment in the area of concentration, persisten[ce] and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert. While the ALJ may be correct that jobs calling for simple and/or one to two step instructions may be unskilled sedentary jobs, such jobs also require an individual to perform repetitive tasks over an eight-hour work day. Plaintiff's nonexertional impairment of moderate limitation in the area of concentration, persistence and pace, could directly affect plaintiff's ability to remain attentive and concentrate. This could directly affect plaintiff's ability to perform simple sedentary work, such as assembly line work, unskilled in nature, which the ALJ found plaintiff capable of performing. It may be that a vocational expert can identify unskilled sedentary jobs which would not be affected by plaintiff's nonexertional limitations. It may also be that a vocational expert would find limitations in the area of concentration, persistence and pace, would affect such jobs and further erode the number of unskilled sedentary jobs available. Reversal and remand is required so a vocational expert can be called and can address the issue.

*Id.* The Commissioner never challenged this case nor any of the other in the line of cases employing this analysis.

The ALJ's Step Five determination in this case is not only internally inconsistent with the ALJ's Step Two findings but is also contrary to the caselaw in this circuit and specific prior holdings of this Court. In choosing to rely exclusively on the Grids, the ALJ committed legal error. *See Loza*, 219 F.3d at 398. Moreover, because the only support for the ALJ's determination was the improperly applied Grids, the determination cannot be said to have substantial support. *See Fields*, 805 F.2d at 1171.

## V.
## RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the

undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff LINDA MILLIGAN not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for administrative action consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 6th day of September, 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other*

*grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).